■ In the Matter of GERALD Y.-C., a Child Alleged to be Permanently Neglected. ROLAND Y., Appellant; ADMINISTRATION FOR CHILDREN'S SERVICES, Respondent. [54 NYS3d 10]—

Order, Family Court, Bronx County (Linda P. Tally, J.), entered on or about September 13, 2016, which denied respondent father's motion for expanded visitation, reversed, on the facts, without costs, and the motion granted, and respondent is awarded one-half hour of unsupervised "sandwich" visitation with the child during each of his existing twice weekly supervised visits, with pick-up and drop-off at the foster care agency.

In 2012, Family Court found that respondent and Arielle C. neglected their 14-month-old son, Gerald, due to their failure to provide safe living conditions. Pursuant to an order of disposition, the child was placed in foster care, where he has resided with the paternal grandmother of his half-sibling since approximately 2013.

In April 2015, the permanency goal for the child was changed from family reunification to adoption. The supervising agency, Abbott House, filed a petition on behalf of the Administration for Children's Services to terminate respondent's parental rights on the grounds that he had permanently neglected the child by failing to maintain contact with or plan for him, despite the agency's diligent efforts to strengthen respondent's relationship with the child.

During the pendency of the permanency proceeding, respondent had supervised visitation with the child, at the agency, from 4 p.m. to 6 p.m. on Wednesdays and Thursdays. In 2016, in two oral applications, followed by a written motion, respondent requested that he be granted one-half hour of unsupervised visitation sandwiched into his supervised visits. In support, respondent presented letters indicating that he was working full-time and receiving therapy and drug treatment, and that he had tested negative for illicit substances since the end of January 2016. Respondent also argued that he was visiting the child regularly, and that having unsupervised visitation was in the child's best interest, because they had an extremely positive and loving relationship. Furthermore, his parental rights might not be terminated, in which case moving from supervised to unsupervised visitation was essential for his reunification with the child.

The agency and the attorney for the child opposed respondent's applications. They argued, inter alia, that too short a period of time had transpired to evaluate whether circumstances had truly changed, and that expanding visitation beyond the twice weekly agency-supervised visits could cause the child emotional harm, because respondent's parental rights might be terminated.

The court first determined that the agency had the discretion to disallow unsupervised visitation. However, it ultimately denied respondent's motion, finding that expanding visitation would not be in the child's best interest, because he had been in foster care since March 2012, and the court was in the process of conducting a hearing to determine whether respondent's parental rights should be terminated.

Pursuant to Family Court Act § 1061, the Family Court may modify any order issued during the course of a proceeding under article 10 for "good cause shown" (*see Matter of Kenneth QQ. [Jodi QQ.]*, 77 AD3d 1223, 1224 [3d Dept 2010]). The determination as to whether good cause has been shown must be "consistent with the best interests of the children after consideration of all relevant facts and circumstances, and must be supported by a sound and substantial basis in the record" (*Matter of Daniel C. [Joyce C.]*, 133 AD3d 596, 597 [2d Dept 2015] [internal quotation marks omitted]).

Respondent demonstrated good cause to expand visitation to include the "sandwich visits," in which he and the child would have one-half hour of unsupervised time in the middle of his supervised visits, after being observed by agency staff. The record establishes that respondent does not presently pose any risk of physical harm to the child, through drug use or otherwise, and that he has made significant progress since the inception of this proceeding.

Although respondent has a history of drug abuse, which led to a period of incarceration, he has demonstrated his commitment to counseling and treatment, and has not tested positive for drugs since January 2016. Respondent has also demonstrated a desire to turn his life around, obtaining regular employment and endeavoring to build a relationship with the child, who is now almost six years old, by regularly attending the twice weekly supervised visits. It is undisputed that these visits have been positive for the child and that there are no concerns about the child's safety in spending time with respondent.

Nor is there any evidence that the limited sandwich visits would be emotionally damaging for the child just because there

is a possibility that respondent's parental rights will be terminated at the end of the permanency proceeding. "No case has been cited for the proposition that a finding of permanent neglect and a goal of adoption are legal impediments to changing the nature of a parent's visitation or increasing its frequency, and none has been found . . . Until the conclusion of disposition and the rendering of a decision, the outcome of this case remains uncertain" (*Matter of T.S. v T. McG.*, 46 Misc 3d 1223[A], 2015 NY Slip Op 50260[U], *2-3 [Fam Ct, Kings County 2015]).

Moreover, the child is currently seeing respondent twice weekly, with positive results, and their bond is continuing to grow. Neither the agency nor the attorney for the child has pointed to any evidence in the record, or provided any other basis to conclude, that the extra one-half hour of unsupervised sandwich visitation would cause the child greater confusion and emotional harm than will already occur if respondent's parental rights are terminated. Concur—Andrias, Moskowitz, Kahn and Gesmer, JJ.

Sweeny, J.P., dissents in a memorandum as follows: The question before this Court is whether there was a rational basis for the Family Court to deny the request for unsupervised visitation. The child has been in foster care most of his life, removed from respondent father because of founded neglect. The child is with a loving family that is ready to adopt him. A termination of parental rights proceeding has been commenced.

Should respondent, who currently has supervised visitation, by some circumstance regain custody, the child's relationship with him can be readjusted to accommodate this. However, should the permanency proceeding result in his parental rights being terminated and the child freed for adoption, all the majority will have done will be to confuse and disorient this child by encouraging him to develop a deeper attachment to a person whose relationship with him will in all likelihood end. This can hardly be seen as being in the child's best interest.

The Family Court has had the parties before it and has lived with the case for a considerable period of time. Although the majority may disagree with the result, it cannot be said that the court's decision lacks a rational basis.

I would affirm.